AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
Subject Digital Devices: Yeti Desktop Computer,
more fully described in Attachment A.

)
)
)
)
)
)

Case No.   MJ24-589

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Subject Digital Devices: Yeti Desktop Computer, more fully described in Attachment A.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252(a)(2),(b)(2) | Possession of Child Pornography |

The application is based on these facts:

☑ See Affidavit of Special Agent Sara K. Blond, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Sara K. Blond, Special Agent (FBI)
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____09/19/2024_____

*Judge's signature*

City and state:  Seattle, Washington

Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

USAO: 2024R00302

## AFFIDAVIT OF SPECIAL AGENT SARA BLOND

STATE OF WASHINGTON        )

                                                      )       ss

COUNTY OF SKAGIT           )


      I, Sara Blond, a Special Agent with the Federal Bureau of Investigation (FBI), in Seattle, Washington, having been duly sworn, state as follows:

## **AFFIANT BACKGROUND**

      1.      I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since 2009. I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code.

      2.      I am assigned to the Everett and Bellingham Resident Agencies of the FBI's Seattle Field Office, where I specialize in Violent Crimes Against Children and Human Trafficking investigations occurring in Snohomish, Skagit, Whatcom, Island, and San Juan counties, which are situated in the Western District of Washington. I am assigned to the FBI Seattle's Crimes Against Children & Human Trafficking Task Force, which includes investigations of the online sexual exploitation of children involving the transmission, possession and production of child pornography, exploitation of children on the internet, and other federal criminal activity. I am also a member of the Seattle Internet Crimes Against Children Task Force ("Seattle ICAC"). The goal of the Seattle ICAC is to catch distributors of child sexual abuse material (CSAM) on the Internet, whether delivered on-line or solicited on-line and distributed through other channels and to catch sexual predators who solicit victims on the Internet through chat rooms, forums and other methods.

AFFIDAVIT OF SPECIAL AGENT BLOND - 1
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.      During my career as an FBI Special Agent, I have served as the case agent in numerous child exploitation investigations.  I have participated in all aspects of child exploitation investigations, including conducting surveillance, undercover operations, identifying victims, interviewing suspects, and executing arrest and search warrants.  In 2015, I underwent specialized training facilitated by the FBI.  I successfully completed coursework to become a Digital Evidence Extraction Technician, as authorized by the FBI's Computer Analysis and Response Team.  In this capacity, I have specialized training in computer forensics, which involves the search, seizure, and extraction of digital evidence; this requires on-going mandatory training on an annual or semi-annual basis.  I have worked as the case agent on numerous investigations involving child pornography, serving as the affiant on search warrants, complaints, and arrest warrants.

4.      As further detailed below, based on my investigation and the investigation of other law enforcement officers, I believe there is probable cause to conclude that a white Yeti desktop computer, used by KEITH DANIEL FREERKSEN, will contain evidence, fruits, and instrumentalities, of violations of Title 18 United States Code Sections 2252(a)(4)(B),(b)(2) Possession of Child Pornography.

5.      The information contained in this affidavit consists of my personal knowledge gained through this investigation, information provided by other law enforcement officers involved in this investigation, information provided by witnesses and others with knowledge of the relevant events and circumstances, information gleaned from my review of evidence, and my training and experience. Because this affidavit is offered for the limited purpose of establishing probable cause, I list only those facts that I believe are necessary to support such a finding. I do not purport to list every fact known to me or others as a result of this investigation.

## INTRODUCTION AND PURPOSE OF AFFIDAVIT

6.      The information contained in this affidavit consists of my personal knowledge gained through this investigation, information provided by other law

AFFIDAVIT OF SPECIAL AGENT BLOND - 2
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

enforcement officers involved in this investigation, information provided by witnesses and others with knowledge of the relevant events and circumstances, information gleaned from my review of evidence, and my training and experience. Because this affidavit is offered for the limited purpose of establishing probable cause, I list only those facts that I believe are necessary to support such a finding. I do not purport to list every fact known to me or others as a result of this investigation.

7.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to search the following digital device: one white Yeti desktop computer (hereinafter the "SUBJECT DIGITAL DEVICE") for evidence of violations of Title 18 United States Code Sections 2252(a)(4), (b)(2), Possession of Child Pornography. There is probable cause to believe the SUBJECT DIGITAL DEVICE, which were used by KEITH FREERKSEN, will contain evidence of this crime and contraband or fruits of this crime, as described in Attachment B.

## DEFINITIONS

The following definitions apply to this affidavit:

8.    "Chat," as used herein, refers to any kind of text communication over the internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as internet forums and email.

9.    For the purposes of this affidavit, a "minor" refers to any person less than eighteen years of age and for the purpose of this search warrant, "Child pornography," as used herein, is defined in 18 U.S.C. § 2256 (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created,

AFFIDAVIT OF SPECIAL AGENT BLOND - 3
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

10.    "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.  See 18 U.S.C. § 2256(2).

11.    "Cloud-based storage service," as used herein, refers to a publicly accessible, online storage provider that collectors of depictions of minors engaged in sexually explicit conduct can use to store and trade depictions of minors engaged in sexually explicit conduct in larger volumes.  Users of such a service can share links and associated passwords to their stored files with other traders or collectors of depictions of minors engaged in sexually explicit conduct in order to grant access to their collections. Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop and laptop computers, mobile phones, and tablets, anywhere and at any time.  An individual with the password to a file stored on a cloud-based service does not need to be a user of the service to access the file.  Access is free and readily available to anyone who has an internet connection.

12.    "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device," including smartphones and mobile devices.

13.    "Data," as used herein refers to the quantities, characters, or symbols on which operations are performed by a computer, being stored and transmitted in the form of electrical signals and recorded on magnetic, optical, or mechanical recording media.

AFFIDAVIT OF SPECIAL AGENT BLOND - 4
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

14.     "Digital Devices" as used herein refers to any physical object that has a computer, microcomputer, or hardware that is capable of receiving, storing, possessing, or potentially sending data.

15.     "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations, community-owned, non-profit, or otherwise privately-owned companies that are in business to provide individuals and businesses access to the internet.  ISPs provide a range of functions for their customers including access to the internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

16.     "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

17.     "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

18.     "User Attributes," as used herein refers to any tangible data, documents, settings, programs, or other information that provides information related to the identity of the specific user of the device, computer, application, program, or record.

## INDIVIDUALS WITH A SEXUAL INTEREST IN MINORS

19.     Based upon my knowledge, experience, and training in depictions of minors engaged in sexually explicit conduct investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common to individuals with a sexual interest in minors who are involved in depictions of minors engaged in sexually explicit conduct as described below.

20.     Those who possess, receive and attempt to receive depictions of minors engaged in sexually explicit conduct may receive sexual gratification, stimulation, and

AFFIDAVIT OF SPECIAL AGENT BLOND - 5
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity. Freerksen has felony convictions in 2017 for multiple counts of possession of child pornography, which resulted in his requirement to register as a sex offender. Based on his prior conviction and coupled with his current charges related to the sexual exploitation of a minor child, there is ample evidence to confirm Freerksen's on-going sexualized interest in minors.

21.     Those who possess, receive, and attempt to receive depictions of minors engaged in sexually explicit conduct may keep records, to include names, contact information, and/or dates of their interaction, of the children they have attempted to seduce, arouse, or with whom they have engaged in the desired sexual acts.

22.     Those who possess, receive, and attempt to receive depictions of minors engaged in sexually explicit conduct often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly. Again, Freerksen is a convicted sex offender who has maintained a sexualized interest in minors, which he has cultivated by possessing depictions of minors engaged in sexually explicit conduct.

23.     Those who possess, receive and attempt to receive depictions of minors engaged in sexually explicit conduct also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other depictions of minors engaged in sexually explicit conduct distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in

AFFIDAVIT OF SPECIAL AGENT BLOND - 6
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

contact and who share the same interests in depictions of minors engaged in sexually explicit conduct.

24.     Those who possess, receive, and attempt to receive depictions of minors engaged in sexually explicit conduct prefer not to be without their depictions of minors engaged in sexually explicit conduct for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of depictions of minors engaged in sexually explicit conduct throughout the world.

### SUMMARY OF PROBABLE CAUSE

25.     On or about January 16, 2024, Detective Elizabeth Paul with the Mount Vernon Police Department (MVPD) called me.  Det. Paul told me she was assigned a missing persons investigation into Minor Victim, a fourteen-year-old girl, who ran away from home on January 5, 2024.  Det. Paul requested I review MVPD's case and help determine an investigative plan.  In addition, MVPD requested I evaluate whether there were case-specific facts indicating Minor Victim was a potential crime victim. Beginning that day and continuing over the next two weeks, I read MVPD's reports, and participated in phone calls and meetings with MVPD regarding their investigation.  I became familiar with the investigative facts and helped MVPD strategize their next steps.

26.     Evidence in MVPD's case indicated Minor Victim had an adult male boyfriend known only as "Keith."  The timeframe of Minor Victim's relationship with "Keith" was initially unclear.  Investigators were not able to determine if "Keith" and Minor Victim were in contact with each other when Minor Victim ran away.

27.     Information about "Keith" was very limited.  MVPD's investigation identified "Keith" as an unconfirmed 30-year-old male that Minor Victim met on Omegle, a website I knew went offline in late 2023 and that the website was suspected by law enforcement agencies of facilitating child abuse.  MVPD interviewed several juveniles who were acquainted with Minor Victim.  Many of them provided a general physical description of "Keith," and they seemed to be describing the same person.

AFFIDAVIT OF SPECIAL AGENT BLOND - 7
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

28.    MVPD told me that Minor Victim's cell phone was factory-reset by her mother just before Minor Victim ran away.  This prevented law enforcement from extracting any forensic data from Minor Victim's phone, meaning any recent communication between Minor Victim and "Keith" was inaccessible to investigators.

29.    On or about January 31, 2024, Det. Paul called me and said MVPD identified "Keith."  MVPD interviewed a friend of Minor Victim, who stated "Keith" sometimes paid for Minor Victim's Uber rides.  After identifying a specific Uber ride paid for by "Keith," MVPD served legal process to Uber requesting information on the person who funded that ride.  Uber returned the following individual: KEITH FREERKSEN with an accompanying email address and cell phone number.

30.    MVPD searched law enforcement databases for the phone number associated with Freerksens's Uber account, which resolved to KEITH DANIEL FREERKSEN in South Haven, Michigan.  MVPD provided Freerksen's identifying information to me.

31.    I ran initial records checks on Freerksen.  I reviewed Freerksens's criminal history, which showed he was a registered sex offender residing in South Haven, Michigan.  Freerksen's criminal history included a felony conviction for possession of child pornography in 2017.  The FBI was able to identify Freerksen's car through a records search.

32.    Then, law enforcement officers searched license plate readers for Freerksen's vehicle during the January 5, 2024, timeframe, which is when Minor Victim went missing.  Freerksen's vehicle registered on multiple license plate readers between Michigan and Washington during that period of time.  Based on the pattern of the license plate reader hits, it appeared Freerksen traveled westbound through Illinois then Idaho on January 3, 2024, through January 5, 2024.  It also appeared that Freerksen traveled eastbound from Idaho to Illinois from January 6, 2024, through January 8, 2024.  These

AFFIDAVIT OF SPECIAL AGENT BLOND - 8
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

facts confirmed my belief that Freerksen traveled to Washington from Michigan, picked

up Minor Victim, then drove back to his residence in Michigan.

33.    MVPD installed an emergency ping order on Freerksen's phone.  The geo-location data placed the phone in the immediate vicinity of Freerksen's residence in South Haven, Michigan.

34.    I contacted law enforcement in Michigan with jurisdiction over Freerksen's residence.  I spoke to Det. Lt.  David Walker with Van Buren County Sheriff's Office and briefed him the investigation into Freerksen and the potential victimization of Minor Victim.  I requested his department conduct an imminent welfare check on Freerksen's residence to determine if Minor Victim was inside.  Det. Lt. Walker secured a search warrant for Freerksen's residence and assembled a search team.

35.    When Van Buren County Sheriff's Office executed the search warrant at Freerksen's house on January 31, 2024, they located Minor Victim inside. During a subsequent search of an unfinished outbuilding determined to house Minor Victim and Freerksen, law enforcement located a sex toy and lubricant, among other things.

36.    During the execution of the same search warrant, law enforcement located numerous digital devices, including two cell phones and one white Yeti desktop computer (the SUBJECT DIGITAL DEVICE).  The SUBJECT DIGITAL DEVICE was located inside the outbuilding where Freerksen resided, near a desk under the staircase.

37.    Other persons who resided on Freerksen's property were interviewed by law enforcement during the search.  At least one of Freerksen's family members said Minor Victim and Freerksen were in a romantic relationship.  Law enforcement located several articles of clothing that belonged to Minor Victim inside of Freerksen's property.

38.    Minor Victim was interviewed after her recovery, both during a SANE exam and later by law enforcement.  Minor Victim disclosed that Freerksen traveled to Washington, picked her up, and drove her back to Michigan. Minor Victim disclosed she and Freerksen had sex multiple times a day since then.  Minor Victim approximated

AFFIDAVIT OF SPECIAL AGENT BLOND - 9
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Freerksen sometimes had sex with her as often as ten times a day. Minor Victim defined these sex acts as inclusive of vaginal and oral penetration. Minor Victim disclosed she and Freerksen had sex in a hotel in Idaho shortly after they left Washington.

39.     Van Buren County Sheriff's Office conducted a forensic examination on the digital devices seized from Freerksen's residence, including the SUBJECT DIGITAL DEVICE. That examination was summarized in a report, which I read. The examination included findings from Freerksen's cell phone and another cell phone Freerksen gave to Minor Victim. Van Buren County Sheriff's Office located nude photos of Minor Victim, as well as videos of Freerksen and Minor Victim having sex. Van Buren County Sheriff's Office also located sexually suggestive text messages between Freerksen and Minor Victim. Some of these conversations occurred in Washington and predated Minor Victim's travel to Michigan.

40.     Van Buren County Sheriff's Office initiated a search on the SUBJECT DIGITAL DEVICE, but they were unable to extract data due to encryption. Van Buren County Sheriff's Office partnered with other agencies to attempt to bypass the encryption but were ultimately unable to do so.

41.     On or about September 11, 2024, the SUBJECT DIGITAL DEVICE was transferred from Van Buren County Sheriff's Office's custody into FBI Seattle's custody. The computer is currently secured in FBI Seattle's Evidence Control Center.

42.     Because cell phones used by Freerksen and Minor Victim already contain CSAM, I believe the SUBJECT DIGITAL DEVICE may also contain CSAM depicting Minor Victim or other children in addition to communications between FREERKSEN and the Minor Victim concerning the travel planned from Michigan to Washington.

## TECHNICAL BACKGROUND

43.     Courts have recognized that the majority of Americans possess and use cellular telephones, and that most of those keep the phones within their reach at all times.

AFFIDAVIT OF SPECIAL AGENT BLOND - 10
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Cellular telephones are used for, among other things, voice, text, email, and SMS communications; accessing and posting to social networking websites, surfing the internet, taking, and storing photographs, creating, and storing documents, notes, music, mapping directions to places, etc.  Courts have recognized that these devices "smart phones" are essentially small computers with vast storage capacities.  Information deleted by the user can be recovered, years after deletion, upon examination of a cell phone's data.

44.    Based on my training and experience, I know that the development of computers and portable digital devices in general have revolutionized the way in which those who seek out depictions of minors engaged in sexually explicit conduct are able to obtain this material.  Computers serve four basic functions in connection with depictions of minors engaged in sexually explicit conduct: production, communication, distribution, and storage.  Additionally, I know that the computer's capability to store images in digital form makes it an ideal repository for depictions of minors engaged in sexually explicit conduct.  The size of the electronic storage media (often referred to as a "hard drive") used in home computers has grown tremendously within the last several years.  Hard drives with the capacity of terabytes are not uncommon.  These drives can store thousands of images and/or videos at a high resolution.

45.    Based on my training and experience and information provided to me by electronic forensic detectives and agents, I know that data can quickly and easily be transferred from one digital device to another digital device via messages, apps, file sharing etc., and via a USB cable or other wired connection.  Data can be transferred from computers or other digital devices to internal and/or external hard drives, tablets, mobile phones, and other mobile devices via a USB cable or other wired connection.  Data can also be transferred between computers and digital devices by copying data to small, portable data storage devices including USB (often referred to as "thumb") drives,

AFFIDAVIT OF SPECIAL AGENT BLOND - 11
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  memory cards (Compact Flash, SD, microSD, etc.) and memory card readers, and optical

2  discs (CDs/DVDs).

3      46.    Based on my training and experience, collectors and distributors of

4  depictions of minors engaged in sexually explicit conduct also use online, remote,

5  resources to retrieve and store depictions of minors engaged in sexually explicit conduct,

6  including services offered by companies such as Google, Yahoo, Apple, Amazon, and

7  Dropbox, among others.  The online services allow a user to set up an account with a

8  remote computing service that provides email services and/or electronic storage of

9  electronic files in any variety of formats.  A user can set up, and access, an online storage

10  account from any digital device with access to the Internet.  Evidence of such online

11  storage of depictions of minors engaged in sexually explicit conduct is often located on

12  the user's computer or smart phone.

13      47.    Based on my training and experience, communications by way of a

14  computer/smart device can be saved or stored on the computer/smart device used for

15  these purposes.  Storing this information can be intentional, i.e., by saving an email or

16  saving the location of one's favorite websites in, for example, "bookmarked" files.

17  Digital information can also be retained unintentionally, e.g., traces of the path of an

18  electronic communication may be automatically stored in many places (e.g., temporary

19  files or ISP client software, among others).  Examples of this stored data include user-

20  created or saved data, such as contact lists, messages sent and received, images, audio

21  and video files, personal calendars, notes, prescriptions, bank statements, videos,

22  documents, and images; as well as device-generated data, such as user identity

23  information, passwords, usage logs and information pertaining to the physical location of

24  the device over time.  Examples of data stored in a smart phone that can reveal a person's

25  location at specific dates and times include metadata and EXIF tags associated with

26  photographs; IP addresses, which are associated with a geographic location; and

27  geographic location associated with the phone sending/receiving signals with cell towers

AFFIDAVIT OF SPECIAL AGENT BLOND - 12
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and satellites. As such, a person's use of the smart phone can reveal where a person has been at dates and times relevant to the crime(s) under investigation; a person's activity at relevant dates and times, and/or places a person frequents at which that person is likely to be found for arrest or at which the suspect stored or inadvertently left evidence behind.

48.    In addition to electronic communications, a user's Internet activities generally leave traces or "footprints" and history files of the browser application used. A forensic examiner often can recover evidence suggesting whether a computer/smart device was using a specific website or application, and when certain files under investigation were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data. Additionally, even if such information is deleted from the memory or storage of the device the data may reside on the device for an extended period of time until overwritten by the operating system of the device.

49.    Based on my training and experience, I have learned that in addition to the traditional collector, law enforcement has encountered offenders who obtain depictions of minors engaged in sexually explicit conduct from the internet, view the contents and subsequently delete the contraband, often after engaging in self-gratification. In light of technological advancements, increasing Internet speeds and worldwide availability of child sexual exploitative material, this phenomenon offers the offender a sense of decreasing risk of being identified and/or apprehended with quantities of contraband. This type of consumer is commonly referred to as a "seek and delete" offender, knowing that the same or different contraband satisfying their interests remain easily discoverable and accessible online for future viewing and self-gratification.

50.    Based on my training and experience and my consultation with electronic forensic detectives and agents who are familiar with searches of computers and smart devices, I have learned that regardless of whether a person discards or collects depictions of minors engaged in sexually explicit conduct he accesses for purposes of viewing and sexual gratification, evidence of such activity is likely to be located. This evidence may

AFFIDAVIT OF SPECIAL AGENT BLOND - 13
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

include the files themselves, logs of account access events, contact lists of others engaged in trafficking of depictions of minors engaged in sexually explicit conduct, and other electronic artifacts that may be forensically recoverable.

51.     Based on my training and experience and my consultation with electronic forensic detectives who are familiar with searches of smart devices, I have learned that offenders will try and obfuscate data containing images and videos of minors engaged in sexual activity.  One potential manner of trying to hide the contraband may be by changing file extensions.  For example, an image file may often have a file extension of ".jpg" of ".jpeg" signifying that it is an image or photograph.  An offender may change the file extension by selecting the "save as" format on a computer or digital device and select ".doc" or ".docx" to make it appear that instead of a contraband image or photograph, it is a word document.  The same process may be used to attempt to hide a video file as well.  Based on these and other attempts to hide potential contraband, it is necessary for forensic examiners to examine all potential data on the computer.

52.     Whether some data on the phone is evidence may depend on other information stored on the computer, and the application of an examiner's knowledge about how a computer operates.  Therefore, the context, location, and data surrounding information in the computer's data may be necessary to understand whether evidence falls within the scope of the warrant.

53.     I also know based on my training and experience that obtaining subscriber information for a particular device is often useful in determining who possessed the device on a particular date and time.  However, a more definitive way to determine the possessor of a device is to examine how the device is used over a period of days or weeks.  The content on the device itself, over a period of time, provides vital evidence of the identity of the user of the device; such evidence can be found in communication content, email information, linked social media accounts, photos (selfies), video, and any

AFFIDAVIT OF SPECIAL AGENT BLOND - 14
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

location data on the device.  Examination of all this data is necessary to accurately determine who possessed the device at dates and times critical to the investigation.

54.    I also know based on my training and experience that a search of the digital device itself would irreversibly alter data and/or evidence on the device.  The commonly accepted best practice method to search a digital device for evidence involves creating a digital image of the device and then searching that image for the responsive evidence. Creating a forensic image does not alter any evidence on the device; it only copies the data into a searchable format.  The image is then searched using search tools to locate and identify that evidence whose seizure is authorized by this warrant.  The unaltered device and the image are then preserved in evidence.

55.    As set forth herein, I seek permission to search for and seize evidence, fruits, and instrumentalities of the above-referenced crimes, and or things or data identifying the individual engaged in the above referenced criminal activity, that might be found in the SUBJECT DIGITAL DEVICE, in whatever form they are found.  It has been my experience that individuals involved and interested in depictions of minors engaged in sexually explicit conduct often prefer to store images or videos depicting depictions of minors engaged in sexually explicit conduct in electronic form.  The ability to store images of depictions of minors engaged in sexually explicit conduct in electronic form makes digital devices an ideal repository for depictions of minors engaged in sexually explicit conduct.

//

//

AFFIDAVIT OF SPECIAL AGENT BLOND - 15
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## **CONCLUSION**

2       56.     The affidavit and application are being presented by reliable electronic

3   means pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

4       57.     Based on the information set forth herein, there is probable cause to search

5   the above-described SUBJECT DIGITAL DEVICE, as further described in Attachment

6   A, for evidence, fruits, and instrumentalities, of violations of Title 18 United States Code

7   Sections 2252(a)(4)(B),(b)(2) Possession of Child Pornography as further described in

8   Attachment B.

9

10

11                                  SARA K. BLOND

12                                  Special Agent
                                    Federal Bureau of Investigation

13

14

15       The above-named agent provided a sworn statement attesting to the truth of the

16   foregoing affidavit by telephone on this _19th_ day of September, 2024.

17

18                                  THE HON. BRIAN A. TSUCHIDA

19                                  United States Magistrate Judge

20

21

22

23

24

25

26

27

AFFIDAVIT OF SPECIAL AGENT BLOND - 16
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## ATTACHMENT A

### Property to Be Searched

This warrant authorizes the seizure and search of the SUBJECT DIGITAL DEVICE, one white Yeti desktop computer and any other electronic storage media found therein the device including internal storage device cards which are currently secured through the FBI Seattle's Evidence Control Center.



ATTACHMENT A - 1
*United States v. Keith Freerksen*  USAO 2024R00302

**ATTACHMENT B**

**Particular Things to be Seized**

The following items, which constitute fruits, contraband, evidence, and instrumentalities of violations of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2) Possession of Child Pornography, including:

1.    All records on the SUBJECT DIGITAL DEVICE described in Attachment A that relate to violations of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2), including:

a.    Evidence of other accounts associated with this device including email addresses, social media accounts, messaging "app" accounts, and other accounts that may be accessed through the digital device that will aid in determining the possessor/user of the device;

b.    Evidence of use of the device to communicate with other individuals with a sexualized interest in minors or others about the above-listed crime(s), via incoming or outgoing calls, chat sessions, instant messages, text messages, app communications, social media, SMS communications, and other similar digital communications related to the sexual abuse of a minor or the possession or production of depictions of minors engaged in sexually explicit conduct;

c.    Evidence of the identity of the person in possession of the device on or about any times that items of evidentiary value (user attribution evidence), located pursuant to this warrant, were created modified, accessed, or otherwise manipulated. Such evidence may be found in digital communications, photos and video and associated metadata, documents, social media activity, and electronically stored information from the digital device necessary to understand how the digital device was used, the purpose of its use, who used it, and when;

d.    Child pornography as defined in 18 U.S.C. § 2256 meaning any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction

is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), in any format or media;

e.      Evidence of malware that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malware; as well as evidence of the lack of such malware;

f.      Evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence, and/or evidence that any of the digital devices were attached to any other digital device;

g.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from a digital device;

h.      Evidence of times the digital device was used;

i.      Electronically stored information from the SUBJECT DIGITAL DEVICE necessary to understand how the digital device was used, the purpose of its use, who used it, and when; and

j.      Information that can be used to calculate the position of the SUBJECT DIGITAL DEVICE, including location data; cell tower usage; GPS satellite data; GPS coordinates for routes and destination queries between the above-listed dates; "app" data or usage information and related location information; and images created, accessed or modified between the above-listed dates, together with their metadata and EXIF tags.

ATTACHMENT B - 2
*United States v. Keith Freerksen*  USAO 2024R00302

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970